OCTOBER AND NOVEMBER TERM, 1884, No. 210.　　　Nov. 10, 1884.

# Craft v. Phillips.

1. While it is not incumbent on the plaintiff in an action of deceit to show affirmatively that he himself is not to blame for the injury complained of, if it appears from the evidence on either side that his own neglect of duty or bad faith towards the defendant has brought about or materially contributed to bring about the result of which he complains he should not be permitted to recover.

2. In an action of deceit founded upon the execution of a release by the defendant of certain lands, bought by plaintiff, from the operation of a deed of trust given to secure the payment of promissory notes, it appeared that at the time of the making of the release, some of the notes were not in the possession of the defendant, and that subsequently in proceedings by the owners to recover upon these notes the

[Craft *v.* Phillips.]

lands were sold. The release recited the sale to the plaintiff as of a prior date. *Held* that this recital was notice to the plaintiff that the release was executed by the defendant on the faith of information he had received, and in the belief not that the sale was then being negotiated or was dependent in any manner on the release, but that it had been fully consummated and the deed accepted.

3. The plaintiff could not in good faith remain silent, and afterwards claim that it was given by defendant and accepted by himself as an inducement to purchase the lands and part with the consideration.

4. A witness testified that he attended to the survey of the lands in question, that he was there for two months, became well acquainted with the lands, learned of actual sales of two thousand acres four miles away, and that what he heard of lands selling surrounding them, and what the citizens there said that land was worth, was his only source of knowledge. *Held* that he was competent to testify as to their value.

5. In an action of deceit the plaintiff called a witness who testified that at the time defendant executed the release of lands from a deed of trust given to secure certain notes, defendant told him that he did not hold all of the notes secured by the deed, and that he, witness, explained the entire transaction and everything within his knowledge to the plaintiff. The plaintiff was then called and asked whether the witness had told him that the defendant did not own the notes. *Held* that the testimony was properly admitted.

Before MERCUR, C. J.; GORDON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ. PAXSON, J., absent.

Error to the Court of Common Pleas, No. 2, of *Allegheny County.*

Case for deceit by Wilson Phillips against Charles C. Craft.

On the trial, October 2, 1884, before EWING, P. J., the following facts appeared: In 1876, J. C. Williams, of Pittsburgh, was the owner of three thousand nine hundred and fifty-four acres of land in Raleigh county, W. Va. Upon this tract of land Williams had, at the date of his purchase, given a deed of trust to Henry L. Gillespie, of Raleigh county, W. Va., to secure $6,000 of the purchase money. The deed recited that Williams was indebted to Charles C. Craft "in the sum of $6,000, for which amount he holds six promissory notes, each dated April 1, 1875, each for the amount of $1,000, viz: One note at one year, one note at two years, two notes at three years, two notes at four years, said notes to bear interest at six per cent. per annum from date, two to the order of William Williams, and four to his own order, made payable at the Third National Bank of Pittsburgh."

The deed further set forth that it was "given to secure the payment of the said recited notes, they being given to secure the balance of the unpaid purchase money."

In 1876, Williams entered into negotiations with Wilson Phillips to exchange a portion of his lands in West

[Craft *v.* Phillips.]

Virginia for a half interest in a mill property which Phillips owned in Mercer county, Pa. On July 28, 1876, Williams, by deed of that date, conveyed to Phillips, four hundred and eighty-four acres of the West Virginia lands, the deed reciting the same as nine hundred and ninety-nine and one half acres. On August 21, 1876, Williams called upon Craft and obtained his signature to the following release:

"For value received, I, C. C. Craft, of Chartiers township, Allegheny county, State of Pennsylvania, do hereby release from incumbrances or deed of trust made by J. C. Williams to Henry L. Gillespie, of Raleigh county, W. Va., all that certain tract of land situate on the west side of the waters of the Piney river, and on the south side of Turkey creek, in Raleigh county, W. Va., containing nine hundred and ninety-nine and one half acres (999½.) Being about the one-fourth part of a tract of three thousand nine hundred and fifty-four acres, which B. F. Ruff and wife, by deed of April 2, 1875, sold and conveyed to J. C. Williams, aforesaid. The same nine hundred and ninety-nine and one half acres, hereby released, being the same which J. C. Williams aforesaid, sold and conveyed to Wilson Phillips, of Mercer county, Pa., by his deed dated July 28, 1876, said deed being recorded in the Recorder's Office in Raleigh county, W. Va., in Book D, pages 242 and 243, and I do further direct Henry L. Gillespie, trustee aforesaid, to release upon the proper record the land above described and conveyed to Wilson Phillips aforesaid.

Witness my hand and seal, this 21st day of August, A. D. 1876.

CHARLES C. CRAFT, [L. S.]"

This release was put on record on August 31, 1876, by Phillips. At the time it was given Craft held two of the notes given to secure the purchase money. Two others were outstanding, one being held by the Allegheny National Bank of Pittsburgh, and the other by the First National Bank of Pittsburgh.

The lands were subsequently sold under proceedings instituted by the banks to recover the amount of these notes.

*Seth Hoadlane*, a witness called on behalf of plaintiff, testified, *inter alia*, as follows:

*Direct examination by Mr. Shafer:*

*Q.* Where do you reside?

*A.* Mercer county.

[*Craft v.* Phillips.]

*Q.* Were you in West Virginia at the time of this sale?
*A.* No, sir.

*Q.* How soon after?
*A.* I presume within a month; shortly after the sale—very shortly; I can't just recollect; perhaps less time.

*Q.* You went down after the sale?
*A.* Yes, right after the sale.

*Q.* The foreclosure sale of 1879?
*A.* Yes, sir.

*Q.* When the land was foreclosed under the bill in chancery?
*A.* Yes, sir.

*Q.* What knowledge have you of the lands in West Virginia owned by Wilson Phillips?
*A.* What I heard of lands selling surrounding it, and what the citizens there said that land was worth at the time of the sale, is the only source of knowledge I have in regard to value.

*By Mr. Woodward:*

*Q.* You were just a visitor?
*A.* I was a visitor at one time two months. I attended for them to surveying the land. I was just a visitor.

*By Mr. Shafer:*

*Q.* You were assisting in a survey of these lands?
*A.* Yes, sir; I attended to the survey of the entire land.

*Q.* And you were there two months?
*A.* Yes, sir.

*Q.* And you became well acquainted with the lands in controversy?
*A.* Yes, sir; know every corner; was at every corner.

*Q.* You had conversations in regard to its value?
*A.* Yes, sir; with the three surveyors that were along —Mr. Hutchinson, Mr. Wright, and Mr. Brickley.

*Q.* And you know its value?
*A.* As far as that information would lead, I would think that I knew its value.

*By* THE COURT:

*Q.* Did you learn of actual sales in the neighborhood?
*A.* Yes, sir; two thousand acres were sold.

*By Mr. Shafer:*

*Q.* Did you know of actual sales in the neighborhood?
*A.* Yes, sir.

*Q.* How near this tract?
*A.* About four miles from it.

Plaintiff's counsel propose to ask the witness the value of the land.

Objected to; that the witness is speaking altogether

[Craft v. Phillips.]

from information received when he was there as a visitor, and from a sale of land that he heard of four miles from this property, and that he is not a competent witness as an expert. Further, it is not the best evidence, such as record evidence would be, or testimony from the neighborhood of men familiar in a general way with values.

The objection was overruled, under exception.

(First assignment of error.)

*Wilson Phillips*, the plaintiff, testified, *inter alia:*

' The land was finally sold from me on account of this deed of trust which was against the land, and which I thought was released, and it seems was not released, or for some cause or other the land was sold from me. It was taken from me by sale.

Upon cross-examination he testified, *inter alia:*

*Q.* When you bought this land from Mr. Williams you knew of this deed of trust?

*A.* Yes, sir.

*Q.* What inquiries did you make, and of whom, as to who held the notes?

*A.* I made inquiries by writing down to Raleigh county to the clerk of the courts, and I got a statement from him in regard to the title, showing that there was a deed of trust, amounting to $6,000, against the property—three thousand nine hundred and fifty-four acres, I think. That was all that was against the property—all that showed on the record was this deed of trust. That is the way I got my information—by writing down to the clerk of the courts.

*Q.* Who did you inquire of as to the notes in the deed of trust?

*A.* I made inquiries to the clerk of courts; that was all the information I acquired.

*J. C. Williams*, a witness for plaintiff, testified:

*A.* I simply went to Mr. Craft and got the release from him.

*Q.* What passed between you?

*A.* I informed Mr. Craft that I was selling part of the ground on which this deed of trust was an incumbrance, and the release was wanted. It was eight years ago, and I don't remember all.

*Q.* What did Mr. Craft do?

*A.* Mr. Craft spoke up. He explained to me that he didn't hold all of the notes. That was my first knowledge of it, and he gave the release; I don't remember how, but he said Mr. McCandless held the notes. I had given these notes to Major Ruff.    *    *    *    *

[Craft *v.* Phillips.]

*Q.* State whether these notes that Mr. McCandless testified the Allegheny National Bank and the First National Bank had, are the notes you refer to.

*A.* I believe so.

*Cross-examined by Mr. Woodward :*

*A.* I went out with Mr. McVay to see Mr. Phillips, I believe. I went to see the property in order to arrange for the exchange in the first place.

*Q.* You met Wilson Phillips at the time ?

*A.* I believe so.

*Q.* Talked to him about the transaction ?

*A.* Yes ; I explained the matter generally.

*Q.* Did you explain about this deed of trust ?

*A.* Yes ; I gave a full explanation of everything connected with the transaction, as far as I can recollect.

*Q.* You applied to Mr. Craft, yourself, for the release ?

*A.* Yes, sir ; I got the release myself from Mr. Craft.

*Q.* He had nothing to do with the parties you were dealing with ?

*A.* No ; he had no connection with them ; I don't know that he ever saw them or not.

By THE COURT :

*Q.* Did you tell Mr. Phillips what Mr. Craft had told you ?

*A.* I think I did ; that is my recollection of it now.

*By Mr Woodward :*

*Q.* You didn't conceal anything from Mr. Phillips ?

*A.* No ; I did not.

*Q.* You think you told him what Mr. Craft said ?

*A.* That is my recollection.

By THE COURT :

*Q.* Did you tell Phillips that Craft did not own these notes ?

*A.* I think so.

*By Mr. Shafer:*

*Q.* What did you tell him ?

*A.* I don't remember absolutely. My recollection is that I explained the entire transaction—everything within my knowledge of the transaction before it was consummated. That is my recollection of the case now.

*Wilson Phillips* was recalled and further examined by Mr. Shafer, as follows :

*Q.* Did Mr. Williams disclose to you what he states Mr. Craft told him—that he did not own these notes ?

Objected to, as proposing to contradict plaintiff's witness.

[Craft v. Phillips.]

Objection overruled, to which defendant's counsel excepts, and bill sealed.

(Second assignment of error.)

A. No, sir; he did not say a word of that.

Q. Not a word about it?

A. No, sir.

Q. At none of the conversations you had with him?

A. I had no reason to have any conversation of that kind, because Mr. Williams did the business. There was nothing said about it.

Q. Then he did not tell you anything of that kind, at any time?

A. I don't remember of him stating anything to me about the notes at all.

The declaration, after reciting the deed of trust and the release averred:

"That the deed by J. C. Williams to Wilson Phillips, plaintiff, and said release of defendant, C. C. Craft, were delivered to plaintiff, Wilson Phillips, contemporaneously; and thereupon plaintiff delivered to J. C. Williams the consideration for said land, viz: The undivided one half of his mill property in Hickory township, Mercer county, Pa.

And afterwards, to wit: On the 31st day of August, 1876, the said deed of release of C. C. Craft, defendant, was admitted to record on the margin of the trust deed in the Recorder's office of Raleigh county, W. Va., by John Beckley, clerk.

Whereupon plaintiff, afterwards, to wit: On the——day of——, 1880, found said C. C. Craft had undertaken to satisfy said trust deed and release the lien thereof when he had no right to do so, as he did not at the time own all the notes said trust deed was given to secure; and thereupon, afterwards, on the day and year aforesaid, said land was sold by a decree of the Circuit Court of Raleigh county, W. Va., for the unpaid notes secured by said trust deed, and which the said C. C. Craft falsely and fraudulently pretended to own, whereby the said plaintiff was deceived into parting with his property and losing it, and the land described also."

The defendant presented, *inter alia*, the following points:

1. That under all the evidence the jury should find for the defendant.

Refused. (Third assignment of error.)

2. That the plaintiff was guilty of such negligence as excludes him from any recovery under the evidence.

[Craft *v.* Phillips.]

Refused.   (Fourth assignment of error.)

3. That .Craft, being shown not to have been cognizant of the transactions between J. C. Williams and the plaintiff, further than what is contained in his release, and the information to him, by Williams, that the plaintiff knew of the notes held by other parties, Craft is to be regarded as releasing after plaintiff had his deed, and placed it of record, and in such case the release did the plaintiff no harm shown, and he cannot recover.

Refused.   (Fifth assignment of error.)

The court charged the jury, *inter alia*, as follows:

" It seems that in 1875, Mr. Wilson Phillips, the plaintiff, was the owner of a half interest in a mill property in Mercer county, which he put in the hands of McVay, a real estate agent, for sale or trade.   In some way Mr. McVay and Mr. Williams came together in the matter.   Mr. Williams appeared to be the owner of a large tract of land in Raleigh county, W. Va.—altogether about four thousand acres, according to the title papers.   There was a proposition to trade nearly one thousand acres of this tract of land owned by Williams for the half interest in the mill property owned by Phillips.   The parties were brought together through Mr. McVay, and negotiations were carried on—the land in West Virginia being examined and found satisfactory, and also the mill property. If you believe the evidence, it was required on both sides, and understood and believed at the time the deeds were exchanged and delivered, that both properties were free from incumbrance.   Mr. Phillips obtained his deed and took possession of property, and after that it was sold by proceedings had on a trust deed, which is equivalent in that State to our mortgage in this State.   If you will consider that the trust deed that has been talked of is a mortgage, you will probably comprehend it better.   It is the usual form in West Virginia and some other States for securing a debt on land.   It seems from the records and documents in evidence, which are uncontradicted, that prior to this transfer, Mr. Williams, who had bought the land from Mr. Craft, executed a trust deed, or mortgage, securing six notes for $1,000 each, which the trust deed asserts belonged at the time to Mr. Craft, and describes two of them made to the order of William Williams, and the others to the order of J. C. Williams, himself, and of course indorsed.   It seems that on the 21st of August, 1876, Mr. Craft executed a release of that trust deed, or mortgage, and acknowledged it in the city of Pittsburgh before William F. Robb, a notary, so that it

could go on record in West Virginia, where the mortgage was also of record, releasing this property bought, or about to be bought, by Phillips from Williams. It turned out afterwards, however, that Mr. Craft was not the owner of all the notes secured by that mortgage at that time; that he had parted with two of them, and one was held by the Allegheny National Bank and the other by the First National Bank both of this city.

Proceedings were had on the mortgage at the instance of a trustee named therein, on notice by the holders of the notes, and a bill in equity was filed in the proper court, in that county and State. An order was made to sell the property, and it seems that the property of Mr. Phillips, the plaintiff, with the exception of one hundred and fifty-seven acres, was sold. He claims it was by the wrong or neglect of Mr. Craft, the defendant, that he lost his property. In the outset there is a serious dispute between the parties upon a vital question. The release, on its face, is an assertion by Mr. Craft that he was the owner of those notes, and unless we conclude that parties who do not know the facts are bound to assume that a man asserts a falsehood in a formal paper of this sort, then anybody who had not notice that he was not the owner of the notes had a right to assume, so far as Mr. Craft was concerned, that he was at the time the owner. I take it that it was an assertion to everybody who had any interest in that land, or the released part of it, by Mr. Craft at the time that he owned the notes or they were paid to him, and he had a right to satisfy the mortgage. Mr. Phillips was entitled to treat that as a truthful assertion, so far as Mr. Craft was concerned, unless he had information to the contrary. He was not entitled to treat it as truthful as to any persons outside who happened to hold these notes; as to them he would be guilty of negligence, which would cause him to lose his property; but as to Mr. Craft, as we have said, he was not guilty of negligence unless we can say that a man is bound to assume another asserts a falsehood in a formal paper of this sort. In saying this, I do not intend to intimate anything against the intentions—the really honest intentions—of Mr. Craft. I know him too well to believe that he would purposely be guilty of a fraud, or aid in a fraud, but when a man puts in the hands of another a paper which asserts impliedly that which is not true, and enables that other one into whose hands he puts the paper to cheat and defraud a third party, we think he is liable for his neglect. Mr. Craft did wrong in executing this paper. He should

[Craft *v.* Phillips.]

have followed his own first impulses, and his own judgment in regard to the matter, and refused to execute a release at all, or else to have put in what he released from, viz: The notes that he actually held himself. In executing this release he did a wrong to the parties to whom he transferred the notes, and to anybody else who would rely upon this paper. Now comes an important question on which there is evidence on both sides, and as to which you must find the fact. It is claimed, on part of the plaintiff, that neither he nor Mr. McVay, who transacted business for him and was his agent, had any knowledge or any intimation from Mr. Williams or Mr. Craft, or anybody else, that would lead them to doubt that Mr. Craft owned the notes secured by this trust deed which he was releasing, or that would make them suspect anything else than that that paper was a proper one. On the other hand, Mr. Williams testified that he thinks Mr. Phillips, or his agent, was informed by him that Mr. Craft did not own all these notes. Mr. Craft's testimony is that he told Williams he did not own the notes. Williams knew that Craft did not own them all, because he knew, if the evidence is to be believed, that Ruff had one of them. If Williams did tell Phillips Craft was not the possessor of all the notes, or if Phillips had notice in any other way of that fact, then he cannot recover—it is an end of this case. You will see it is a vital question. If you determine it in favor of the defendant, you need not inquire any further; if in favor of Mr. Phillips, then you go to further inquiries. Did the plaintiff rely upon that release? You must not only find that he did not know that Craft was not the owner of these notes, but you must find that it was on the strength and faith of this release being what it purported to be—the assertion of Mr. Craft that he had the right to release—that he parted with his money or property. This release must have been received by him in good faith, without knowledge or notice of any kind that Craft did not own the notes, and in addition he must have parted with his property and taken the conveyance on the strength of it; otherwise he cannot recover. The burden of proof is on the plaintiff. If he did so take it, without any knowledge or notice that Craft did not own the notes, and had no right to release the lien of the trust deed, and the property was sold from him without any fault of his, then he is damaged by Mr. Craft's negligent act, and he is entitled to recover. All these questions of fact are for you.''

Verdict for plaintiff for $1,212 72, and judgment there-

on.    The defendant thereupon took this writ, assigning
for error, *inter alia*, the admissions of evidence and the
answers to his points as above.

*M. A. Woodward* for plaintiff in error.

The plaintiff had no case, without assuming, as the
Court did, that the release was a plain assertion by Craft,
that he held the notes secured by the deed of trust, and
that the plaintiff relied, properly and ignorantly thereon,
in taking a title the loss of which is his ground of dam-
ages.

The defects in this are manifest and fatal.

The release does not, necessarily, imply that Craft
owned the notes.    On the other hand, it did allege that it
was a release subsequent to Phillips' acquisition of the
title, and Craft swears that it was executed with that un-
derstanding, which evidence, with the paper, is conclu-
sive, and the paper itself so warned the plaintiff, hence
he cannot charge Craft with having taken the title after
the release.

That the plaintiff inquired for liens, and discovered
the deed of trust, and made no further inquiries as he
testifies, was, unless fully informed as stated by Wil-
liams, guilty of negligence in construing and relying upon
the release, and in allowing the land to go as it did, of
such character as precludes him from setting up a claim
against Craft, this statement of the facts makes plain
enough.

Roberts *v.* Halstead, 9 Barr., 32—6.

*N. W. Shafer* for defendant in error.

JANUARY 5, 1885.—The opinion of the Court was de-
livered by STERRETT, J.:

While it is not incumbent on the plaintiff in an action
of deceit to show affirmatively that he himself is not to
blame for the injury complained of, if it appears from
the evidence on either side that his own neglect of duty
or bad faith toward the defendant has brought about, or
materially contributed to bring about, the result of which
he complains, he should not be permitted to recover.

It was claimed by defendant below that on August 21,
1876, when he executed the release, he was informed and
believed that plaintiff had previously purchased the land
described therein, and had accepted a deed therefor from
Williams.    His own testimony to that effect was distinct
and positive, and he is fully corroborated therein by the

[Craft *v.* Phillips.]

recital in the release, which describes the land with "being the same which J. C. Williams aforesaid sold and conveyed to Wilson Phillips, of Mercer county, Pa., by his deed, dated July 26, 1876, said deed being recorded in the recorder's office in Raleigh, Virginia," etc. This recital was notice to plaintiff that the release was executed by the defendant on the faith of information he had received, and in the belief, not that the sale was then being negotiated, or dependent in any manner on the release, but that it had been fully consummated and the deed accepted nearly a month before. Under these circumstances, was it not the duty of plaintiff to correct the misapprehension of fact under which defendant had evidently executed the release, rather than to permit him to remain in ignorance of the deception that appears to have been practiced on him? If he had been informed that the negotiation was still pending, that plaintiff refused to accept the deed and part with the consideration until the release was procured; *non constat*, that he would not have objected on the ground that the release had been obtained by misrepresentation. Knowing, as the plaintiff must have known from the face of the release itself, that it was given under a misapprehension of fact—that it was not executed for the purpose of inducing him to purchase the land—how could he, in the exercise of good faith, remain silent and afterwards claim that it was given by defendant, and accepted by himself, as an inducement to purchase the land and part with the consideration therefor? His silence, under the circumstances, was virtually an affirmation of the misrepresentation under which he had every reason to believe the release was procured. The use of the release as an inducement to purchase is by no means an immaterial fact. The plaintiff's claim is based mainly on the ground that it was given and accepted as such inducement. After reciting the deed of trust as a lien on the land, and averring that it so remained until plaintiff was about to purchase, the declaration further avers that defendant, "in order that the sale to plaintiff should be made, wrongfully intending to injure plaintiff, executed a written release of said land, and caused the same to be delivered to plaintiff, whereby he was deceived, and on the faith of said release parted with the consideration therefor to said J. S. Williams."

These are not merely formal averments. They are matters of substance, and constitute the most essential part of plaintiff's case. Some of them, so far, at least, as defendant is concerned, were not sustained by the evidence. There

[Diehl *et al. v.* Woods.]

appears to be nothing in the case to support the averment that defendant executed the release "in order that the sale to plaintiff should be made." That was, doubtless, the purpose for which Williams procured it and intended to use it, but there is no testimony tending to show that defendant intended it for that purpose. On the contrary, the release itself shows it was executed in the belief that the sale had been consummated several weeks before. With explicit notice of this fact brought home to him, what right had the plaintiff to act on the faith of the release and neglect the duty of making that inquiry which the recital plainly suggested? If that inquiry had been made, it, doubtless, would have led to such an understanding of the facts connected with the release as would have avoided the loss that appears to have resulted.

In view of the pleadings and evidence, we think, for reasons above suggested, that defendant's first and second points, covered by the third and fourth specifications, should have been affirmed.

The remaining assignments of error are not sustained. The testimony complained of in the first and second specifications of error was not incompetent.

With some modification, defendant's third point might have been affirmed ; but, as presented, there was no error in refusing it. Whether Williams "gave plaintiff full information and concealed nothing," was a question of fact for the jury. The testimony on that point was conflicting and was rightly submitted to the jury.

Judgment reversed, and a *venire facias de novo* awarded.